UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLAY PRIMES, JR.,

                                    Plaintiff,        **No. 6:15-cv-06431(MAT)**
                                                      **DECISION AND ORDER**

                    -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                    Defendant.

_____

## I.   Introduction

        Represented by counsel, Clay Primes, Jr., ("Plaintiff") brings
this action pursuant to Titles II and XVI of the Social Security
Act, challenging the final decision of the Commissioner of Social
Security ("the Commissioner") denying his application for
Disability Insurance Benefits ("DIB") and Supplemental Security
Income ("SSI"). The Court has jurisdiction over this matter
pursuant to 42 U.S.C. § 405(g). For the reasons discussed below,
the Commissioner's decision is reversed, and the matter is remanded
for further administrative proceedings consistent with this
opinion.

## II.  Procedural Status

        On April 26, 2012, Plaintiff filed applications for DIB and
SSI. See T.66, 67, 123-29, 130-35.[1] He alleged disability
beginning December 9, 2010, due to a back impairment, congestive

--------

[1]
        Numbers preceded by "T." refer to pages from the administrative transcript,
submitted by Defendant as a separately bound exhibit.

heart failure, high blood pressure, nerve damage to the left leg, stomach problems, migraine headaches, anxiety, and depression. T.157. After the applications were denied, Plaintiff requested a hearing, which was held before Administrative Law Judge John P. Costello ("the ALJ") on March 24, 2014. <u>See</u> T.30-72. Plaintiff appeared with his attorney and testified. Vocational expert Julie A. Andrews ("the VE") also testified. On April 29, 2014, the ALJ issued an unfavorable decision, <u>see</u> T.15-28. The Appeals Council denied Plaintiff's request for review on May 28, 2015, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In connection with their motions, the parties have comprehensively summarized the administrative transcript in their briefs, and the Court adopts and incorporates these factual summaries by reference. The record evidence will be discussed in further detail below, as necessary to the resolution of the parties' contentions. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further administrative proceedings consistent with this opinion.

## III. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must

accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112; see also, e.g., Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987) ("The scope of review of a disability determination . . . involves two levels of inquiry. . . . We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by 'substantial evidence.'") (internal citations omitted; quotation omitted).

## IV. The ALJ's Decision

The ALJ followed the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520(a), 416.929(a).

-3-

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. T.20. At step two, the ALJ found that Plaintiff had the following "severe" impairments:  history of chronic heart failure, lumbar stenosis, sciatica, migraine headaches, and depression. T.20. At step three, the ALJ specifically considered Listings 1.04 (disorders of the spine), 4.02 and 4.00D2 (chronic heart failure while on a regimen of prescribed treatment), and 12.04 (affective disorders), and determined that Plaintiff's impairments, either singly or in combination, did not meet or equal any listed impairment.

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform the full range of light work, with the exception that he is limited to only simple tasks and only occasional interaction with coworkers and the general public.

At step four, the ALJ found that Plaintiff could not perform his past relevant work as an automotive detailer. T.26.

At step five, the ALJ found that Plaintiff was a "younger individual," with a limited education and the ability to communicate in English. Considering Plaintiff's age, experience, and RFC, and relying on the VE's testimony, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as housekeeper/cleaner and

agricultural produce sorter. T.27-28. Therefore, the ALJ entered a finding of "not disabled." T.28.

## V.   Discussion

### A.   Erroneous Credibility Assessment

Plaintiff urges that remand is required because the ALJ mischaracterized the record and applied the incorrect legal standard when analyzing the credibility of his subjective complaints of pain and other limitations resulting from his impairments. The Court agrees, as discussed further below.

The Commissioner's regulations require an ALJ to consider "all of the available evidence" concerning a claimant's complaints of pain when such complaints are accompanied by "medical signs and laboratory findings . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . ., would lead to a conclusion that [he] [is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a). ALJ must follow the two-step process set forth in the regulations for evaluating a claimant's symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *6-9 (S.S.A. July 2, 1996) (summarizing framework for assessing credibility). First, the ALJ must determine whether the medical signs or laboratory findings in the record demonstrate that the claimant has a medically determinable impairment that reasonably

-5-

could be expected to cause the claimant's symptoms. <u>See</u> 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If so, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" on his or her ability to do work, in view of "all of the available evidence," including the claimant's history, the signs and laboratory findings, the claimant's statements, and statements from treating and nontreating sources. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). While the regulations note that objective medical evidence is useful to this inquiry, they do not allow an ALJ to reject statements about the intensity and persistence of pain and other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

If a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must make a finding as to the claimant's credibility, SSR 96-7p, 1996 WL 374186, at *4, paying particular attention to the following regulatory factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications; (5) treatment modalities, other than medication, for relief of the claimant's pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors

concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. While it is "not sufficient for the [ALJ] to make a single, conclusory statement" that the claimant is not credible or to recite the relevant factors, without analysis, id. at *2, remand is not required where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision," Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).

### 1. Failure to Address Plaintiff's Statements Regarding the Limitations from His Migraine Headaches

Here, the ALJ concluded that Plaintiff's medical impairments reasonably could be expected to cause the symptoms he alleged. T.23. However, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were "not entirely credible for the reasons explained in [the] decision." T.23. The ALJ then proceeded to summarize the medical evidence and Plaintiff's testimony and other statements. Interspersed in this recitation are comments about Plaintiff's credibility.

-7-

As an initial matter, the ALJ "never set[ ] forth which of [P]laintiff's medical impairments he considered in determining whether those conditions could reasonably be expected to produce the debilitating pain of which [P]laintiff complains." Duncan v. Astrue, 2011 WL 1748549, at *24 (E.D.N.Y. May 6, 2011). Despite a step-two finding Plaintiff has the "severe" impairment of migraine headaches, T.20, the ALJ merely noted that the records indicate that Plaintiff experiences migraine headaches, but did not evaluate Plaintiff's testimony regarding the functional limitations the migraine headaches would cause. T.24. This omission is significant since the symptoms and limitations from Plaintiff's migraines could affect his ability to perform work-related activities: Plaintiff testified that when he is having a migraine headache, he needs to shut off all the lights and is unable to be functional, e.g., he cannot hold a conversation or watch television. T.57. He estimated that he may have about 8 migraines lasting from between 6 to 32 hours each in a 30-day period. T.58.

### 2.   "Playing Doctor" and Mischaracterizing the Record

Plaintiff also raises a challenge to comments the ALJ made in his assessment of consultative physician Dr. Harbinder Toor's report dated August 6, 2012. On examination, Dr. Toor observed that Plaintiff appeared to be "in moderate pain" and walked with an "abnormal" gait, "slightly limping toward the left side with and without a cane." T.267. Dr. Toor observed a limited range of motion

in Plaintiff's cervical and lumbar spine. He opined that Plaintiff has "moderate to severe" limitations in standing, walking, bending, and lifting; moderate limitations in sitting for long periods; and that "[p]ain interferes with his physical routine." T.269. The ALJ assigned Dr. Toor's opinion only "some" weight, noting that (1) Plaintiff "declined to lie down on the examining table" and (2) it was "unusual" for Dr. Toor to have found no muscle atrophy, "given the limitations the claimant alleges." T.24. With regard to Plaintiff declining to lie down on the examining table during the examination with Dr. Toor, the implication is that Plaintiff was exaggerating his pain, which led to Dr. Toor overstating the degree of functional limitations he has. However, Plaintiff's "alleged poor effort on testing with consultative examiners is consistent with [P]laintiff's treating physicians' repeated diagnoses of pain in the tested regions." Duncan v. Astrue, 2011 WL 1748549, at *24 (E.D.N.Y. May 6, 2011). Indeed, treating orthopedist Dr. M. Gordon Whitbeck noted that Plaintiff was "relatively unwilling to do extension and lateral bending because he knew [it] was going to make his [pain] so severe." T.346.

With respect to the ALJ's observation that it was "unusual" for Dr. Toor to have found no muscle atrophy, "given the limitations the claimant alleges[,]" T.24, this amounts to the ALJ impermissibly relying on his own lay opinion to fill perceived gaps in the evidentiary record. See Blakes ex rel. Wolfe v. Barnhart,

331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here.") (citations omitted); Hilsdorf v. Comm'r of Social Sec., 724 F. Supp.2d 330, 354 (E.D.N.Y. 2010) ("[T]he ALJ improperly drew his own conclusions about [the claimant]'s daily functioning, which were not supported by substantial evidence.").

The ALJ then stated, in his discussion of Plaintiff's back injury, that "[s]trength in both his lower extremities is within normal limits, his reflexes are intact and normal and sensations are intact in both lower extremities (internal citations omitted). Given that the claimant's strength in his lower extremities is within normal limits, it is *reasonable to assume* that the claimant walks a reasonable amount during the day." T.26 (emphasis supplied). However, "[t]his assessment is the result of a hunch and an ALJ may not rely on a hunch." Blakes, 331 F.3d at 570 (citing Wilder v. Chater, 64 F.3d 335, 338 (7th Cir. 1995) ("[A disability claimant] is entitled to a decision based on the record rather than on a hunch."); other citation omitted). The ALJ attempted to buttress this assumption by noting that Plaintiff testified that he "walks up thirty to forty stairs a day (Testimony)[.]" T.26. This statement mischaracterizes the record inasmuch as it omits

Plaintiff's later statement that "[he] ha[s] a lot of stairs at [his] house, so [he] tr[ies] to stay in the house because you know—to avoid going down the stairs." T.61. It is clearly improper for an ALJ to discount a claimant's credibility by relying on a mischaracterization of his or her testimony. See, e.g., Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996) (The ALJ erred in a third way by mischaracterizing Lugo's own testimony. The ALJ bolstered his skepticism about Lugo's reports of pain by observing that Lugo had testified that he 'does housework and uses public transportation.' The ALJ's statement in this regard was simply wrong. . . . On remand, if the ALJ again finds that Lugo's complaints of pain are unfounded, his conclusion must be based on accurate references to the record.") (internal citation to record omitted). Moreover, it is unfair to penalize a disability claimant for enduring pain in order to care for themselves or pursue important goals. See Balsamo v. Chater, 142 F.3d 75, 61-82 (2d Cir. 1998). Plaintiff explained that his "front and back stairs are maybe 30, 40 steps." T.61. Thus, in order to simply leave his house, to get fresh air or go to a doctor's appointment, Plaintiff has no choice but to use the stairs. Furthermore, the ALJ's assessment of Plaintiff's lower extremity strength is a medical opinion and is another example of the ALJ "playing doctor" and substituting his lay opinion for that of Dr. Toor, who opined that

Plaintiff has "moderate to severe" limitations in standing, walking, bending, and lifting.

The ALJ repeated this error when he opined that Plaintiff "has not generally received the type of medical treatment one would expect from a totally disabled individual[.]" T.26. The ALJ identified no medical expert who opined that Plaintiff's medical treatment was atypical for a person who is disabled. Thus, the ALJ again improperly relied on his own lay opinion. Furthermore, the ALJ mischaracterized the record in his attempt to support this statement. In particular, he asserted that Plaintiff "did not complete physical therapy, and is not currently in physical therapy." T.26. Not only does this misrepresent the record regarding his attendance at physical therapy appointments, it omits any mention of the pain management and surgical consults Plaintiff underwent. With regard to physical therapy, orthopedist M. Gordon Whitbeck, M.D. indicated in February of 2014, that Plaintiff "was recommended to undergo a course of physical therapy which he has completed." T.347. This is consistent with the November 18, 2013, note from Dr. Ajai K. Nemani, a pain management specialist to whom Plaintiff was referred by Dr. Whitbeck, noting that Plaintiff had recently started a course of physical therapy. T.339. Along with the physical therapy, Plaintiff received a course of steroid epidural injections from Dr. Nemani, but reported they did not help. E.g., T.343. Therefore, Dr. Nemani re-referred Plaintiff to

Dr. Whitbeck to discuss further treatment options. T.343. Dr. Whitbeck referred Plaintiff to a neurologist, Dr. Pardee (whose notes are not in the record) for electrodiagnostic testing and evaluation. T.353. According to Dr. Whitbeck's summary, Dr. Pardee did not find evidence of significant active or chronic radiculopathy, but "[i]t seems as if it is [Dr. Pardee's] impression from his note that central pain processing may be an issue here." T.353. While the ALJ "must . . . assess the credibility of th[e] [claimant's] testimony along with the remainder of the record," the ALJ "'cannot simply selectively choose evidence in the record that supports his conclusions' . . . [or] mis-characterize a claimant's testimony." Meadors v. Astrue, 370 F. App'x 179, 185 n. 2 (2d Cir. 2010) (quoting Gecevic v. Sec'y of Health and Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y.1995)).

Next, the ALJ also found that Plaintiff's subjective complaints are negated by certain of his activities. In particular, the ALJ relied on Plaintiff's testimony that he climbs up thirty to forty stairs a day. As noted above, the ALJ omitted mention of Plaintiff's later testimony that he avoided leaving the house in order to avoid having to climb stairs. The ALJ likewise did not explain how this stair-climbing is the equivalent of the ability to perform the exertional and nonexertional demands of light work on a "regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule[,]" SSR 96-8p, 1996 WL

-13-

374184, at *2. See, e.g., Polidoro v. Apfel, No. 98 CIV.2071(RPP),
1999 WL 203350, at *8 (S.D.N.Y. 1999) ("A claimant's participation
in the activities of daily living will not rebut his or her
subjective statements of pain or impairment unless there is proof
that the claimant engaged in those activities for sustained periods
of time comparable to those required to hold a sedentary job.")
(citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638,
643 (2d Cir. 1983) (finding that Secretary failed to sustain burden
of showing that claimant could perform sedentary work on the basis
of (1) testimony that he sometimes reads, watches television,
listens to the radio, rides buses and subways, and (2) ALJ's
observation that claimant "'sat still for the duration of the
hearing and was in no evident pain or distress'"; circuit found
"[t]here was no proof that [claimant] engaged in any of these
activities for sustained periods comparable to those required to
hold a sedentary job")).

The ALJ also found Plaintiff's complaints of pain less
credible because his testimony revealed he attempted to shovel snow
on one occasion during the previous winter. T.26. Although the ALJ
did not ignore Plaintiff's qualifying comment that he was bedridden
"for a week" after this activity, the ALJ nevertheless disregarded
that testimony because the "treatment notes do not include mention
of it," T.26, i.e., Plaintiff being confined to bed after this
incident. It is improper for an ALJ to draw an adverse credibility

inference based on a claimant's failure to seek, or noncompliance with, treatment "without first considering any explanations that the individual may provide, or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. Despite having the opportunity to do so at the hearing, the ALJ failed to inquire into any possible reasons why Plaintiff did not seek medical treatment for the exacerbation of his back injury caused by his unsuccessful attempt to shovel snow. The Court notes that a January 2013, treatment note from neurologist Lawrence Samkoff, M.D., indicates that Plaintiff would be referred to his primary care physician for an appropriate prescription "as [Plaintiff] does not currently have insurance coverage." T.336. Not having health insurance "certainly provides an explanation for failing to seek treatment." McGregor v. Astrue, 993 F. Supp.2d 130, 142-43 (N.D.N.Y. 2012). And, "[a]n ALJ is not permitted to penalize a claimant for being unable to afford further medical treatment." Canty v. Colvin, No. 6:14-cv-06713(MAT), 2015 WL 9077651, at *5 (W.D.N.Y. Dec. 16, 2015) (citing Pierce v. Astrue, 946 F. Supp.2d 296, 307 (W.D.N.Y. 2013)).

In sum, the ALJ committed legal error in analyzing Plaintiff's subjective complaints. Additionally, the ALJ relied on mischaracterizations of the record to justify his discounting of Plaintiff's testimony, which means that the ALJ's credibility

assessment is not supported by substantial evidence. <u>See</u>, <u>e.g.</u>, <u>Poles v. Colvin</u>, No. 14-cv-06622(MAT), 2015 WL 6024400, at *6 (W.D.N.Y. Oct. 15, 2015) ("[A]lthough the ALJ provided 'specific' reasons for discounting Plaintiff's credibility, the Court cannot find that they were 'legitimate' reasons because they are based on a misconstruction of the record.") (citation omitted). These errors warrant remand.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, the ALJ is directed to consider the entire record and to re-evaluate Plaintiff's credibility in light of the appropriate regulatory factors, caselaw, and SSR 96-7p. The ALJ also is directed to obtain Plaintiff's treatment records from neurologist Dr. Pardee, to whom Dr. Whitbeck referred Plaintiff for testing, and who was mentioned in the records from Dr. Whitbeck which were submitted to the Appeals Council.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:      February 5, 2016
            Rochester, New York

-16-